IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAYVON BENTON, | Case No. 1:18-cv-2159 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE THOMAS M. PARKER |
| CITY OF CLEVELAND, et al., | |
| Defendants. | **MEMORANDUM OF OPINION AND ORDER** |

I. **Introduction**

Defendants, David Lamm ("Lamm"), David Shapiro ("Shapiro"), Cynthia Moore ("Moore"), John Lally ("Lally"), and Thomas Shoulders ("Shoulders") (collectively "defendants") move for judgment on the pleadings on the First, Fourth, Fifth and Sixth Causes of action in plaintiff, Jayvon Benton's ("Benton"), complaint. ECF Doc. 22. Benton claims that defendants violated his constitutional rights by seizing him from the Cuyahoga County Juvenile Justice Detention Center ("CCJJDC") without a warrant or an order from the juvenile court. The parties consented to my jurisdiction. ECF Doc. 24.

After construing the allegations in the complaint in a light most favorable to Benton, the court DENIES, without prejudice, defendants' motion for judgment on the pleadings on Benton's unlawful seizure claim (First Cause of Action); DENIES, as moot, defendants' motion for judgment on the pleadings on Benton's false imprisonment claim (Fourth Cause of Action); and

GRANTS defendants' motion for judgment on the pleadings on Benton's conspiracy claims (Fifth and Sixth Causes of Action).

## II. Statement of Facts

The following facts, taken from the pleadings, must be assumed to be true for purposes of this motion: on August 28, 2015, Benton was arrested by the Cuyahoga Metropolitan Housing Authority ("CMHA") after allegedly running from a stolen vehicle. ECF Doc. 1 at ¶ 25. He was a minor at the time and was transported to the CCJJDC. *Id.* at ¶¶ 15, 26. Benton was arraigned in the Cuyahoga County Juvenile Court on August 31, 2015 and remanded to the CCJJDC. *Id.* at ¶¶ 27, 30.

Defendants, Shoulders, Shapiro, Lamm, Moore and Lally are all employees of the City of Cleveland, Ohio Police Department. *Id.* at ¶¶ 19-23. On September 1, 2015, Shoulders removed Benton from the CCJJDC without a warrant or an order from the juvenile court. *Id.* at ¶ 34. Shoulders placed Benton in handcuffs and transported him to the Cuyahoga County Justice Center. *Id.* at ¶¶ 39, 41. Shoulders began interrogating Benton while transporting him to the Justice Center. *Id.* at ¶ 42.

After processing Benton at the Justice Center, Shoulders transported him to the Second District Police Station. *Id.* at ¶ 46. There, Shoulders, along with defendants, Shapiro, Lamm, Moore and Lally, interrogated Benton for approximately three hours. *Id.* at ¶ 47. Benton was not permitted to speak with his mother or his attorney during the interrogation. *Id.* at ¶¶ 51, 52. The officers recorded the interrogation but stopped and started the recording several times. *Id.* at ¶ 49.

### III. Standard of Review

A "motion for judgment on the pleadings under Rule 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion." *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 2013 WL 560515 (6th Cir. 2013) (citing *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001)):

> The court must construe the complaint in a light most favorable to the plaintiff and accept all factual allegations as true. The factual allegations must raise a right to relief above the speculative level. In other words, the Rule 12(b)(6) standard requires that a plaintiff provide enough facts to state a claim to relief that is plausible on its face. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Bare allegations without a factual context do not create a plausible claim. A complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory. The bare assertion of legal conclusions is not enough to constitute a claim for relief.

(*Id.*) (internal citations and quotations omitted).

### IV. Analysis

#### A. First and Fourth Causes of Action – Unlawful Seizure & False Imprisonment

Benton's First Cause of Action is an unlawful seizure claim. ECF Doc. 1 at Page ID# 12-13. His Fourth Cause of Action is a false imprisonment claim. *Id.* at Page ID# 15-16. Defendants Lamm, Shapiro, Moore and Lally move for dismissal of these causes of action because Benton does not allege any facts implicating their involvement in the conduct alleged. They argue that Benton alleges only facts implicating Shoulders in these claims. Shoulders moves to dismiss these claims because Benton was already in custody when Shoulders seized him from the CCJJDC. ECF Doc. 22 at Page ID# 148. Shoulders cites *Johnson v. Leger,* No. 3:07CV128(WWE) (D. Conn. Mar. 31, 2009), 2009 WL 902384; *Doe v. Selsky,* 841 F. Supp.2d 730, 732 (W.D.N.Y. 2012); and *Walker v. Sankhi,* 494 F. App'x 140, 142-143 (2d Cir. 2012) in

3

support of his argument. These cases involved the application of New York's unlawful seizure law.

Benton voluntarily dismissed his Fourth Cause of Action, the false imprisonment claim, on January 16, 2019. ECF Doc. 30. Benton argues that his first cause of action, the unlawful seizure claim, applies to defendants, Lamm, Shapiro, Moore, and Lally, because they participated in his interrogation, which he characterizes as "illegal and constitutional conduct for over three … hours." ECF Doc. 31 at Page ID# 174. Benton argues that inmates or prisoners still have rights. He cites several Supreme Court cases recognizing prisoner's constitutional rights. However, it does not appear that any of these cases addressed whether a person already in state custody could assert an unlawful seizure claim against other state actors. ECF Doc. 31 at Page ID# 175. Benton also argues that the juvenile court magistrate's order supports his false imprisonment claim because the magistrate found that Benton was unlawfully seized on September 1, 2015 in violation of CCJJDC's policy. *Id.* Benton argues that the CCJJDC's policy requiring an arrest warrant, warrant to convey, or an order from the juvenile court, is designed to protect the constitutional rights of its youth. Benton contends that defendants unlawfully seized him by interrogating him for several hours outside the presence of his mother and/or attorney.

Benton's unlawful seizure claim arises under the Fourth Amendment[1], which protects a person's right to be free from "unreasonable searches and seizures," those unsupported by a warrant or probable cause. "A person is seized by the police and thus entitled to challenge the government action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement." *United States v.*

---

[1] Applied to the states by the Fourteenth Amendment.

*McCauley,* 548 F.3d 440, 443 (6th Cir. 2008) (quoting *Brendlin v. California*, 551 U.S. 249, 254, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007)). A seizure occurs if an examination of all the surrounding circumstances shows that "a reasonable person would have believed that he was not free to leave." *Smoak v. Hall,* 460 F.3d 768, 778 (6th Cir. 2006) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).

Neither side cites controlling case law on the issue presented – whether it is possible to unlawfully seize an individual who is already being held by a juvenile court. However, the Sixth Circuit's discussion in *Ortega v. United States Immigration & Customs Enforcement,* 737 F.3d 435, 440 (6th Cir. 2013), suggests that the court could recognize an unlawful seizure even in some circumstances akin to incarceration. Mr. Ortega was serving a home confinement service when he was seized by the local corrections department and taken to jail. The Sixth Circuit noted that a convicted individual usually cannot complain about the deprivation of liberty that results. It discussed several cases holding that prisoners do not have any right to be placed in a particular prison or cell. *Sandin v. Conner,* 515 U.S. 472, 484-485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Meacham v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). However, the Sixth Circuit held that this line of cases did not defeat Mr. Ortega's claim. The court reasoned,

> A transfer from home confinement to prison confinement, it seems to us, amounts to a sufficiently severe change in conditions to implicate due process. Yes, both settings involve confinement, a reality confirmed by the fact that Ortega must wear an electronic-monitoring device at all times, by the fact that he must obtain permission to leave the home and may do so only for discrete reasons and by the fact he would be prosecuted for escape if he did not comply. Ky. Rev. Stat. § 532.200(2). But the two settings of confinement still amount to significant differences in kind, not degree. A prison cot is not the same as a bed, a cell not the same as a home, from every vantage point: privacy, companionship, comfort. And the privileges available in each are worlds apart—from eating prison food in a cell to eating one's own food at home, from working in a prison job to working in one's current job, from attending religious services in the prison to attending

5

> one's own church, from watching television with other inmates in a common area to watching television with one's family and friends at home, from visiting a prison doctor to visiting one's own doctor. See Ky. Rev. Stat. § 532.200(1). These marked disparities between individual liberty in the one setting as opposed to the other suffice to trigger due process.

The Sixth Circuit did not decide whether or not removing Mr. Ortega from his home constituted an unlawful seizure because they determined that the officers were entitled to qualified immunity on the basis that no relevant Supreme Court authority existed at the time of the incident. *Ortega,* 737 F.3d at 441. Nonetheless, the Court's analysis shows that, in some circumstances, even a convicted individual may have the protection of certain due process rights before he may be seized.

Here, Benton alleges facts supporting the possible recognition of an unlawful seizure claim even though he was seized from the CCJJDC. For example, at the time of the incident Benton had not been convicted of a crime; he had been arraigned and denied the charges. ECF Doc. 1 at ¶ 29. Shoulders unsuccessfully tried to remove Benton from the CCJJDC three times before removing him without a warrant on the fourth attempt. ECF Doc. 1 at ¶¶ 32-34. Benton was placed in handcuffs when leaving the CCJJDC. ECF Doc. 1 at ¶ 39. Benton was not permitted to have his attorney and/or his mother present during his interrogation. ECF Doc. 1 at ¶¶ 51-52. Finally, the juvenile court suppressed the evidence that Shoulders obtained from Benton during this incident. The court held that Benton had been unlawfully seized in violation of the Fourth and Fourteenth Amendments. ECF Doc. 1 at ¶ 57. Although the juvenile court's holding may not have preclusive effect in this case, it is one of many considerations suggesting that an unlawful seizure occurred even though Benton was residing at the CCJJDC when he was seized. Because defendants have not cited any controlling authority and the facts of this case

suggest that an unlawful seizure may have taken place, the court will DENY, without prejudice, Shoulders' motion for judgment on Benton's first cause of action for unlawful seizure.

The court will also deny, without prejudice, the motion filed by defendants Lamm, Shapiro, Moore and Lally. At this point in the litigation, their involvement in Benton's detention is not fully known. Benton alleges that they participated in his three-hour interrogation at the police station. ECF Doc. ¶ 47. During that time, Benton was not free to leave. After construing the factual allegations in the complaint in a light most favorable to the plaintiff and accepting all factual allegations as true, the court must DENY, without prejudice, the remaining defendants' motion for judgment on the pleadings on Benton's unlawful seizure claim.

Benton voluntarily dismissed his Fourth Cause of Action, the false imprisonment claim. ECF Doc. 30. Thus, the motion for judgment on the pleadings on Benton's Fourth Cause of Action is DENIED, as moot.

### B. Fifth and Sixth Causes of Action – Conspiracy Claims

Benton asserts conspiracy claims in his Fifth and Sixth Causes of Action. ECF Doc. 1 at Page ID# 16-17. Defendants argue that Benton cannot prove any conspiracy claims against them because a political subdivision "cannot conspire with its own agents or employees." *Hull v. Cuyahoga Valley Joint Vocational School District Board of Education,* 926 F.2d 505, 509 (6th Cir. 1991) (citing *Doherty v. American Motors Corp.,* 728 F.2d 334, 339 (6th Cir. 1984); *see also, Estate of Smithers v. Flint,* 602 F.3d 758, fn4 (6th Cir. 2010). Defendants' argument is predicated on the intra-corporate conspiracy doctrine, about which there is a division in the courts of appeals. *Ziglar v. Abbasi,* 137 S.Ct. 1843, 1868, 198 L.Ed.2d 290 (2017).

Benton argues that the U.S. Supreme court decided the applicability of the intra-corporate conspiracy doctrine in § 1985 actions in *Ziglar v. Abbassi.* ECF Doc. 31 at Page ID# 179.

7

However, the Court actually left the question undecided, stating, that "[n]othing in this opinion should be interpreted as either approving or disapproving the intra-corporate-conspiracy doctrine's application in the context of an alleged § 1985 violation." *Ziglar,* 137 S.Ct. at 1868. In fact, it was unnecessary for the Court to decide the validity of the intra-corporate conspiracy doctrine because it determined the defendants were entitled to a qualified immunity. The Court held that the validity of the intra-corporate conspiracy doctrine was not clearly established such that the officers should have known that their alleged agreements were forbidden by law.

Defendants argue that the Sixth Circuit applied the intra-corporate conspiracy doctrine to § 1985 claims in *Ohio ex rel. Moore v. Brahma Investment Group, Inc.* 723 F. App'x 284, 289 (6th Cir. 2018). Defendants are correct. The Sixth Circuit approved a district court's application of the intra-corporate conspiracy doctrine as one of several bases to dismiss claims brought against the defendants. *Id.* (*citing, Johnson v. Hills & Dales Gen. Hosp.* 40 F.3d 837, 839-40 (6th Cir. 1994)). The court noted that the only exception to this rule occurs when employees act outside the course of their employment. *Ohio ex. rel. Moore,* 723 F. App'x at 289.

The intra-corporate conspiracy doctrine provides that when "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Amadasu v. The Christ Hospital,* 514 F.3d 504, 507 (6th Cir. 2008). A conspiracy claim under § 1983, like a conspiracy claim under § 1985, requires an agreement between two parties. "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Estate of Smithers ex rel. Norris v. City of Flint,* 602 F.3d 758, 765 n. 4 (6th Cir.2010) (quoting *Hull*, 926 F.2d at 509-10); *see also Doherty v. Am. Motors Corp.,* 728 F.2d 334, 339 (6th Cir.1984) (noting that the intra-

8

corporate conspiracy doctrine has been "consistently applied in allegations of conspiracy under the Civil Rights Act."). Thus, when a plaintiff's conspiracy claim under § 1983 is premised on an agreement between employees of a city, the claim is barred by the intra-corporate conspiracy doctrine. *Id.* at 632.

Here, Benton argues that the intra-corporate conspiracy doctrine is not a recognized legal defense to his claims. But the case law he cites, *Ziglar v. Abbasi,* does not support his argument. Indeed, it appears that the Sixth Circuit does recognize the intra-corporate conspiracy doctrine and the Supreme Court has not yet resolved the conflict in the circuit courts of appeals.

Other than this unsupported legal argument, Benton's brief simply restates the general conspiracy allegations from his complaint. ECF Doc. 31 at Page ID# 180. He alleges that defendants conspired to detain and interrogate him without the presence of counsel or his mother. *Id.* He alleges specific facts against Shoulders, suggesting that he knew he was not permitted to remove him from the CCJJDC without a warrant or court order. However, as to the other defendants, Benton only generally alleges that they conspired to deprive and continued to deprive him of his constitutional rights, his right to remain silent, etc. See ECF Doc. 1 at ¶¶ 97, 103. Thus, even if he could overcome the intra-corporate conspiracy doctrine, Benton's conclusory conspiracy allegations do not show a shared plan or agreement between Shoulders and the remaining defendants. He was required to plead sufficient factual matter to render the claim plausible; a legal conclusion couched as a factual allegation is not sufficient, nor are recitations of the elements of a cause of action. *See Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010).

Benton's conspiracy claims are barred by the intra-corporate conspiracy doctrine. Moreover, his conspiracy allegations against all defendants (other than Shoulders) are conclusory

and insufficient to state a conspiracy claim in any event. Shoulders could not conspire with himself even if the intra-corporate conspiracy doctrine did not bar Benton's conspiracy claims. *See Estate of Smithers ex rel. Norris,* 602 F.3d at 765 n. 4. For these reasons, the court will GRANT defendants' motion for judgment on the pleadings on Benton's Fifth and Sixth Causes of Action.

V.  **Conclusion**

The court DENIES, without prejudice, defendants' motion for judgment on the pleadings on Benton's unlawful seizure claim in his First Cause of Action; DENIES, as moot, defendants' motion for judgment on the pleadings on Benton's false imprisonment claim in his Fourth Cause of Action; and GRANTS defendants' motion for judgment on the pleadings on Benton's conspiracy claims in his Fifth and Sixth Causes of Action.

IT IS SO ORDERED.

Dated: February 22, 2019

Thomas M. Parker
United States Magistrate Judge