UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAYVON BENTON | ) | CASE NO.: 1:18-CV-02159 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE THOMAS M. |
| CITY OF CLEVELAND, ET. AL., | ) | PARKER |
| | ) | |
| Defendants. | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| | ) | |

Plaintiff, Jayvon Benton, by and through undersigned counsel, hereby moves this Honorable Court for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Summary Judgment is appropriate at this time because there are no material facts in dispute and Plaintiff is entitled to judgment as a matter of law. Reasons for granting Summary Judgment to Plaintiff are more adequately described in the attached Memorandum, which is incorporated herein by reference.

Respectfully submitted,

*/s/ Sara Gedeon*
David B. Malik (0023763)
Sara Gedeon (0085759)
8437 Mayfield Road, Suite 101
Chesterland, Ohio 44026
Telephone: 440-729-8260
Fax: 440-490-1177
dbm30@sbcglobal.net
sgedeon1021@gmail.com

**MEMORANDUM**

I.     **UNCONTESTED FACTS**

On Friday, August 28, 2015, Cuyahoga Metropolitan Housing Authority ("CMHA") Police arrested Jayvon Benton. (Exhibit 1 – Affidavit of Magistrate Rucker, Exhibit 1A – Magistrate's Order, Exhibit 1B – Magistrate's Decision, Exhibit 3 – Investigation File)

Jayvon Benton was a juvenile at the time of his arrest. (Exhibit 1A, Exhibit 1B, Exhibit 3)

On August 28, 2015, Jayvon Benton was taken to the Cuyahoga County Juvenile Justice Detention Center ("CCJJDC"). (Exhibit 1A, Exhibit 1B, Exhibit 2 – Affidavit of Morgan Pirc, Exhibit 2A – Motion to Suppress Hearing Transcript, Exhibit 3)

Jayvon Benton was to be held in the CCJJDC pending further proceedings. (Exhibit 1A, Exhibit 1B)

On August 31, 2015 case number DL151111991 was filed with Cuyahoga County Juvenile Court. (Exhibit 1)

Case number DL151111991 alleged Jayvon Benton had received stolen property (F4) and obstructed official business (M2). (Exhibit 1A, Exhibit 1B)

On August 31, 2015, The Cuyahoga County Public Defender's Office, Juvenile Division was appointed by the Court to represent Jayvon Benton. (Exhibit 1A, Exhibit 1B)

When the Public Defender was appointed, Jayvon Benton's Sixth Amendment rights attached. (Exhibit 1B)

On or about August 28, 2015, Defendant Shoulders was assigned to investigate an aggravated robbery involving a black Ford Fusion. (Exhibit 1A, Exhibit 1B, Exhibit 2A)

2

Defendant Shoulders, during the course and scope of his employment as a state actor[1], made three unsuccessful attempts to retrieve Jayvon Benton from the CCJJDC. (Exhibit 1A, Exhibit 1B, Exhibit 2A)

Defendant Shoulders while acting at all times in his capacity as a state actor and within the course and scope of his employment, knew he did not have an arrest warrant, a warrant to convey, or an order of the Cuyahoga County Juvenile Court to remove Jayvon Benton from the CCJJDC. (Exhibit 1A, Exhibit 1B, Exhibit 4).

On September 1, 2015, on his fourth attempt, Defendant Shoulders "finally got a hold of somebody that seemed to have some intelligence" who allowed Defendant Shoulders to remove Jayvon Benton from CCJJDC. (Exhibit 1A, Exhibit 1B, Exhibit 2A)

CCJJDC policy, consistent with the underlying constitutional safeguard of the Fourth and Fourteenth Amendments, prudently requires that a police officer who wishes to remove a juvenile from the CCJJDC present an arrest warrant, a warrant to convey to detention center staff, or an order from the Cuyahoga County Juvenile Court. (Exhibit 1A, Exhibit 1B, Exhibit 2A)

This CCJJDC policy further requires that a juvenile's attorney be contacted first before law enforcement can speak with the juvenile. (Exhibit 1A, Exhibit 1B, Exhibit 2A)

This CCJJDC policy has been in effect since 1988. (Exhibit 1A, Exhibit 1B, Exhibit 2A)

This CCJJDC policy was drafted under the advice of counsel for the Cuyahoga County Juvenile Court with the protection of the residents' constitutional rights in mind. (Exhibit 1A, Exhibit 1B, Exhibit 2A)

Defendants Shoulders, Shapiro, Moore, and Lally have not received training specific to the removal of minors from the CCJJDC. (Exhibits 4 – Shoulders Discovery Responses, Exhibit

---

[1] [A] "state actor" is someone who participates in "state" action in a meaningful way. *Gokor v. Schlievert*, 335 F. Supp. 3d 972.

5 – Moore Discovery Responses, Exhibit 6 – Shapiro Discovery Responses, Exhibit 7 – Lally Discovery Responses)

Defendants Shoulders, Shapiro, Moore, and Lally have not received any training specific to the interrogation of minors. (Exhibits 4, 5, 6, 7)

None of the Officer Defendants identified any policies they must follow specific to the removal of juveniles from the CCJJDC. (Exhibits 4, 5, 6, 7, 8)

Defendants Shoulders, Shapiro, Moore, and Lally have not received training specific to the interrogation of subjects represented by counsel. (Exhibits 4, 5, 6, 7)

None of the Officer Defendants identified any policies they must follow specific to the interrogation of minors. (Exhibits 4, 5, 6, 7, Exhibit 8 – Lam Discovery Responses)

None of the Officer Defendants identified any policies they must follow specific to the interrogation of subjects represented by counsel. (Exhibits 4, 5, 6, 7, 8)

On September 1, 2015, Defendant Shoulders, while acting in the course and scope of his employment and as a state actor, deliberately handcuffed and removed Jayvon Benton from the CCJJDC. (Exhibit 4)

At this time, Jayvon Benton was in Defendant Shoulders's custody. (Exhibit 1A, Exhibit 1B, Exhibit 2A)

At no time during this initial encounter did Defendant Shoulders Mirandize Jayvon Benton. (Exhibit 1B, Exhibit 2A)

On September 1, 2015, Defendant Shoulders transported Jayvon Benton to the Second District police station. (Exhibit 4)

Defendant Shoulders did so to question Jayvon Benton regarding the Black Ford Fusion's aggravated robbery investigation. (Exhibit 1A, Exhibit 1B)

4

When he arrived at the Second District with Jayvon Benton, Defendant Shoulders informed Defendants Shapiro, Lam, and Moore that he was there with a juvenile for questioning. (Exhibits 5, 6, 8)

When Defendant Lally arrived for his shift, Jayvon Benton was sitting at Defendant Shapiro's desk. (Exhibit 7)

The questioning was held in the office of Detective Shoulders and lasted for approximately 3 hours. (Exhibit 1A)

On September 1, 2015, Defendants Shoulders, Shapiro, Lam, Moore, and Lally were all present at some point during the questioning of Jayvon Benton. (Exhibits 4, 5, 6, 7, 8)

Defendants Shoulders, Shapiro, Lam, Moore, and Lally each knew that Jayvon Benton was a minor child on September 1, 2019. (Exhibits 4, 5, 6, 7, 8)

At no time while Jayvon Benton was at the Second District police station was Jayvon Benton allowed to speak to his attorney or his mother. (Exhibit 1A)

As a result of the September 1, 2015 questioning of Jayvon Benton, case number DL15113409 was filed with the Court on September 24, 2015, alleging nine counts against Jayvon Benton. (Exhibit 1, Exhibit 1B)

Jayvon Benton was represented by Public Defender Morgan Pirc in case number DL15113409. (Exhibit 2)

On February 17, 2016, Morgan Pirc filed a Motion to Suppress Illegally Obtained Statements & Evidence contending that the police officers' actions on September 1, 2015 violated Jayvon Benton's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution. (Exhibit 1B)

5

A Motion to Suppress Hearing was held on March 2, 2016 during which Detective Shoulders testified as the State's witness. (Exhibit 2, Exhibit 2A)

Morgan Pirc crossed examined Defendant Shoulders during the Motion to Suppress Hearing. (Exhibit 2, Exhibit 2A)

Retanio Rucker, Magistrate with the Cuyahoga County Juvenile Court presided over the Motion to Suppress Hearing and heard the testimony of Defendant Shoulders. (Exhibit 1)

As a result of the testimony presented, Magistrate Rucker personally authored and issued the April 4, 2016 Magistrate's Order. (Exhibit 1, Exhibit 1A)

As a result of an Appeal's Court opinion, Magistrate Rucker re-issued the April 4, 2016 Magistrate's Order as a Magistrate's Decision on January 30, 2017. (Exhibit 1, Exhibit 1B)

The Court found that Jayvon Benton was unlawfully seized from the CCJJDC by Defendant Shoulders on September 1, 2015 in violation of the Fourth and Fourteenth Amendments. (Exhibit 1B)

The Court found Defendant Shoulders intentionally circumvented the protections of the Fourth and Fourteenth Amendments. (Exhibit 1B)

The Court found that Jayvon Benton's unlawful seizure on September 1, 2015 violated established Detention Center policy and, therefore, the Fourth and Fourteenth Amendments. (Exhibit 1B)

The State of Ohio asserted that as it related to Shoulders's actions on September 1, 2015, any violation of Detention Center policy was de minimus as it was not his responsibility to ensure compliance with the policy. (Exhibit 1B)

The Court found that the concealment of Jayvon Benton's removal by Defendant Shoulders was "part and parcel of Sgt. Shoulder's rouse", that the concealment was intentional,

6

and that it allowed Defendants Shoulders to unlawfully interrogate Jayvon Benton without the knowledge of the Court, Jayvon's attorney and/or mother. (Exhibit 1B)

The Court found that any and all evidence obtained by law enforcement on September 1, 2015 or as a result thereof must be suppressed as the fruit of the poisonous tree. (Exhibit 1B)

The Court found that Shoulders's September 1, 2015 interrogation violated the alleged delinquent's Fifth Amendment right against self-incrimination. (Exhibit 1B)

The State of Ohio contended that the statements obtained by Shoulders were voluntary and the Court disagreed. (Exhibit 1B)

The Court found that Shoulders's September 1, 2015 seizure and interrogation violated Jayvon Benton's Sixth Amendment right to counsel. (Exhibit 1B)

The Court found that Shoulders "utilized the situation to knowingly put the alleged delinquent in an untenable position absent the presence of his attorney." (Exhibit 1B)

The Court found that "[t]he circumstances created by the Detective on September 1st gave him the opportunity and time needed to illegally extract a statement from the child as a means of closing the Black Ford Fusion aggravated robbery investigation." (Exhibit 1B)

The Court granted the February 17th Motion to Suppress. (Exhibit 1B)

The Court dismissed case number DL15113409. (Exhibit 1B)

None of the Defendant Officers were disciplined for their conduct with Jayvon Benton on September 1, 2015. (Exhibit 9 – City of Cleveland Discovery Responses[2])

Both the police and the prosecution through their oaths and duties share the mutual responsibility to uphold the Constitution.

## II.    LAW & ANALYSIS

---

[2] City of Cleveland produced discipline and personnel files for Defendant Officers none of which showed that any of the Defendant Officers had been disciplined for the incident involving Plaintiff Jayvon Benton.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R.Civ.P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied sub nom. *Superior Roll Forming Co. v. Interroyal Corp.*, 494 U.S. 1091 (1990). Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson*, 477 U.S. at 250; *Guarino,* 980 F.2d at 404-05.

8

## B. THE CONSITUTIONAL VIOLATIONS ARE FIRMLY ESTABLISHED PURSUANT TO COLLATERAL ESTOPPEL

[I]ssue preclusion, [or] collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd*. 692 N.E.2d 140. Issue preclusion can be used to prevent the re-litigation of issues and facts from a criminal proceeding in a later civil proceeding, however, "the trial court in the subsequent civil proceeding must examine the record to determine exactly what was decided in the criminal proceedings. *Local 167 of Internatl. Brotherhood of Teamsters, Chauffers, Stablemen & Helpers of America v. United States*, 291 U.S. 293, 298-99 (1934). It "extends only to questions 'directly put in issue and directly determined' in the criminal proceedings." *Id*., *citing Emich Motors Corp. v. Gen. Motors*, 340 U.S. 558, 569 (1951). In aid of this determination, the court looks to "the record, the pleadings, the evidence submitted, the jury instructions, and any opinions of the courts." *Id*.

"[I]ssue preclusion, or collateral estoppel, bars relitigation of an issue or fact where that issue or fact was fully and fairly determined in a prior action." *Alternatives Unlimited-Special, Inc. Ohio Dep't of Educ.*, 168 Ohio App. 3d 592, 607 (10th Dist. 2006) An "issue or a fact that was fairly, fully, and necessarily litigated and determined in a prior action, may not be questioned in a subsequent action between the same parties or their privies," whether or not the cause of action in the two actions are identical. *Id. citing Nye v. Ohio Bd. of Examiners of Architects*, Franklin App. No. 05AP-833, 2006 Ohio 948, at P13, 165 Ohio App. 3d 502, 847 N.E.2d 46. "In other words, material facts judicially determined by a court of competent jurisdiction are barred from relitigation between the same parties or persons in privity with them. *Alternatives Unlimited-*

9

*Special* at 607; *see Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 195, 2 Ohio B. 732, 443 N.E.2d 978.

The federal courts are obligated to give a state court judgment the same preclusive effect that courts of the rendering state would give it. *McCormick v. Braverman*, 451 F.3d 382, 397 (6th Cir. 2006). Under Ohio law, collateral estoppel comprises the following four elements: (1) a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (2) the issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; (3) the issue in the present suit must have been identical to the issue involved in the prior suit; and (4) the party against whom estoppel is sought was a party or in privity with a party to the prior action. *Kovacic v. Cuyahoga County Dep't of Chldren & Family Servs.*, 809 F. Supp. 2d 754, 772, citing *Cashelmara Villas Ltd. P'ship v. DiBenedetto*, 87 Ohio App. 3d 809, 623 N.E.2d 213, 215 (Ohio Ct. App. 1993).

"Inherent to both issue and claim preclusion is the concept that a previously litigated and judicially determined fact or claim only acts as a bar to subsequent litigation between the same parties or their privies. This concept is referred to as mutuality and is generally a prerequisite to estoppel." *Alternatives Unlimited-Special* at 607; *see Goodson*, at 196. With few exceptions, strangers to the previous judgment or decree will not be affected by the previous adjudication, and the doctrine of estoppel is irrelevant. *Id*.

In the present case, it is clear that The Cuyahoga County Juvenile Court, reached a judgment on the merits for The Constitutional violations of Jayvon Benton. The Court found that Jayvon Benton's Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated based on the conduct of the Defendant Officers in this case, mainly the conduct of Defendant Shoulders. The Court made these determinations after a Motion to Suppress Hearing was had where

10

Defendant Shoulders testified as the State's sole witness. As stated in the uncontested fact section above, the Court found that Jayvon Benton was unlawfully seized in violation of the Fourth and Fourteenth Amendments, that the removal of Jayvon Benton from the CCJJDC was "part and parcel of Sgt. Shoulder's rouse", and that the interrogation violated the Fifth and Sixth Amendments. The Court then granted the Motion to Suppress and the charges against Jayvon Benton were dismissed. These very same Constitutional Violations are the ones at issue in the present case. of these Constitutional The Constitutional violations were actually and directly litigated in the Cuyahoga County Juvenile Court.

Defendant Officers in this case were parties in privity with the State of Ohio in the Cuyahoga County Juvenile Court case. Ohio courts have recognized that the concept of privity for purposes of res judicata is "somewhat amorphous." *Brown v. Dayton*, 89 Ohio St. 3d 245, 2000 Ohio 148, 730 N.E.2d 958, 962 (Ohio 2000). "In certain situations a broader definition of 'privity' is warranted. As a general matter, privity 'is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." *Bruszewski v. United States (C.A.3, 1950), 181 F.2d 419, 423* (Goodrich, J., concurring)." *Thompson v. Wing* (1994), 70 Ohio St. 3d 176, 184, 637 N.E.2d 917, 923. In *Brown*, the Ohio Supreme Court found that mutuality of interest, including an identity of desired result, created privity. A "mutuality of interest, including an identity of desired result," might also support a finding of privity. *Brown* at 248, 730 N.E.2d 958.

In the present case, there is obviously a close relationship and mutuality of interest between these Defendant Officers and the State who zealously prosecuted the case against Jayvon Benton. The Defendant Officers, each officially state actors, are assigned to investigate crimes on behalf of the state. After they conduct their investigations while acting as state actors,

11

they turn the information over so that the State of Ohio can bring charges against juveniles including Jayvon Benton. Police officers represent a unique group of state actors in that prior to obtaining their official state commissions to become police officers, they are required by the State of Ohio to complete and pass a basic core curriculum through the officially state approved and certified, Ohio Police Officers Training Academy. In utilizing their official certification and commission, each officer is at all times, enforcing the laws of the State of Ohio.

During the entire criminal case involving Jayvon Benton, Defendant Officers, especially Defendant Shoulders, had the exact same desired result – to be able to, use the information obtained on September 1, 2015 specifically for the prosecution of Jayvon Benton by the State of Ohio. The State of Ohio and Defendant Shoulders had the shared law enforcement desire that Jayvon Benton be convicted based on the information obtained on September 1, 2015. The State of Ohio and the officers contended in support of Shoulders and Defendant Officers that the statements obtained from Jayvon Benton were voluntary. The State of Ohio and the officers also contended that the removal of Jayvon Benton did not violate the Fourth and Fourteenth Amendments. The State and the Defendant Officers further contended that as it related to Shoulders's actions on September 1, 2015, any violation of Detention Center policy was de minimus as it was not his responsibility to ensure compliance with the CCJJDC policy.

The record herein irrefutably demonstrates the closeness of the inseparable and indivisible nature of the relationship and the dedicated mutuality of interest that existed between the State of Ohio and its police officer investigators and interrogators turned witnesses, who presented, on behalf of the State of Ohio, a united front and seamless effort to investigate, prosecute and the convict Jayvon Benton.

Fortunately, the Court hearing the evidence disagreed with the State's arguments in support of Defendant Shoulders's conduct. The Court found found multiple constitutional violations. The State also embraced Defendant Shoulders's assertion that he removed Jayvon Benton for processing purposes which the Court found "not credible" for nine different reasons. The Court found that "the State's theory is based on a pretext or rouse perpetrated by Sgt. Shoulders." (Exhibit 1B) Defendant Officers were bound by the Juvenile Court's decision. They were not free to pursue the investigation of Jayvon Benton with any of the information they obtained on September 1, 2015. Lastly, if the Juvenile Court found differently, the arguments asserted by Defendants in this case would likely be the exact opposite of the position they are currently taking. In short, if the Juvenile Court had previously determined that Jayvon Benton's Constitutional rights were *not* violated, Defendant Officers in the present case would surely argue that a prior Court had already made these determinations and that consequently, Jayvon Benton's civil case has no merit.

The Constitutional Violations of Jayvon Benton by Defendant Officers were fully litigated in the Cuyahoga County Juvenile Court. Therefore, the Constitutional Violations are firmly established pursuant to collateral estoppel. Plaintiff Jayvon Benton is entitled to judgment as a matter of law.

### C. MONELL CLAIM

To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged violation occurred because of a municipal policy, practice, or custom; a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011).

A plaintiff who sues for a constitutional violation under 42 U.S.C. §1983 must prove that the policy or custom caused the alleged injury. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). One way to prove that a policy or custom caused the injury is to show that an official policy is the moving force of the constitutional violation, *Polk Cnty. V. Dodson*, 454 U.S. 312, 326 (1981). Another way is to show a custom of inadequate training or supervision. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). A third way is to show ratification of an employee's violation of the plaintiff's constitutional rights. *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

### i. Inadequate Training and Supervision

Inadequate training may serve as the basis for § 1983 liability where it amounts to deliberate indifference to the rights of persons with whom employees come into contact (in this case Defendants Clark and Hancock). *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). In order to impose liability on The City of Cleveland, Plaintiff must show (1) that a training program is inadequate to the tasks that the employees must perform; (2) that the inadequacy is the result of municipality's deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury. *Plinton v. Cty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008). There are "at least two different situations in which inadequate training could be found to be the result of deliberate indifference." *Cherrington v. Skeeter*, 34 F.3d 631, 646 (6th Cir. 2003). One situation where inadequate training is deliberately indifferent is where the municipality "fails to act in response to repeated complaints of constitutional violations." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). And the other is "failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction." *Id*. Plaintiff must then show that the

14

inadequate training was closely related to the injury or actually caused the injury. *Plinton*, 540 F.3d at 646. All are applicable to Plaintiff's cases.

Defendants in this case have not received training specific to removing a juvenile from the CCJJDC, interrogating a juvenile, or interrogating a suspect who is represented by counsel. Additionally, none of the Defendants in this case were able to identify which specific Cleveland Police Department Policies related to removing a juvenile from the CCJJDC, interrogating a juvenile, or interrogating a suspect who is represented by counsel. None of the Defendant Officers are able to identify what they are required to do when a minor in their custody requests the presence of his mother. (Exhibits 4, 5, 6, 7, 8) At the time Jayvon was removed from the CCJJDC, none of the Defendant Officers were aware of the CCJJDC policy that governed law enforcement's removal of CCJJDC residents. (Exhibit 1A) A policy that has been in effect since 1988 and was drafted with the protections of the residents' constitutional rights in mind. (Exhibit 1B) The City of Cleveland failed to train Defendant Officers on how to properly and legally remove juveniles from the CCJJDC. In addition, the City failed to properly train Defendant Officers in dealing with minors and people represented by counsel. The City failed to train on these very important issues despite the fact that Cleveland police officers are often tasked with dealing with juveniles and suspects represented by counsel. These failures were deliberately indifferent to the citizens of Cleveland and these failures were a direct cause of the Constitutional Violations to Jayvon Benton. The City of Cleveland knew that failure to train on these important issues would result in consequences for its citizens.

### ii. Ratification

Defendant The City of Cleveland has repeatedly ratified the unconstitutional acts of its officers especially Defendant Shoulders. Therefore, Defendant City of Cleveland is liable and

15

Plaintiff's Motion for Summary Judgment should be granted. A municipality is the proximate cause of a violation when the municipality ratifies the unconstitutional act of an employee by failing to meaningfully investigate and punish allegations of unconstitutional conduct. *See Wright v. City of Canton*, 138 F. Supp. 2d 955, 966 (N.D. Ohio 2001) (*citing Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir. 1990); *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985). A ratification claim has two elements. A plaintiff must show that "(1) a final policymaker approved an investigation…(2)…so inadequate as to constitute a ratification of the alleged" constitutional violation. *Wright*, 138 F. Supp. 2d at 966. In other words, a plaintiff must show that "the investigation was not designed to discover what actually happened." *Id*. at 967.

The City of Cleveland and policymakers Chief Calvin Williams and Safety Director Michael McGrath took no initiative to investigate the illegal and unconstitutional conduct despite there being a Court decision outlining the Constitutional Violations of Jayvon Benton. The Defendant Officers were not disciplined for any of their illegal conduct including but not limited to Court determinations that (1) Jayvon Benton was illegally removed from the CCJJDC in violation of his Fourth and Fourteenth Amendment rights and longstanding CCJJDC policy; (2) Jayvon Benton's Fifth Amendment rights were violated on September 1, 2015; and (3) Jayvon Benton's Sixth Amendment rights were violated. Additionally, policymakers Chief Calvin Williams and Safety Director Michael McGrath made no effort to investigate or discipline Defendant Shoulders despite a Court transcript of his testimony which included some very suspect and disturbing statements. (Exhibit 1A, Exhibit 1B, Exhibit 2A) In fact, Shoulders's testimony that he removed Jayvon Benton from the CCJJDC for "processing purposes" on the receiving stolen property charge "not credible" for nine separate and distinct reasons. The Court included the following statements in its decision: (1) The State's theory is based on a pretext or

16

rouse by Shoulders; (2) the Detective (Shoulders) intentionally circumvented the protections of the Fourth and Fourteenth Amendments; (3) Shoulders's actions on September 1, 2015 were a pretext or rouse for his real purpose; (3) Shoulders was looking for a way to get Jayvon Benton alone for the purpose of eliciting a response; (4) the removal deemed Unconstitutional by the Court was consistent with the way Shoulders had previously removed minors; (5) the intentional concealment of the removal was part and parcel of Shoulders's rouse; and (6) the removal by Shoulders was an intentional violation of Jayvon Benton's Constitutional rights. (Exhibit 1B) The Court further classified that September 1, 2015 questioning as an interrogation which further violated Jayvon Benton's Constitutional rights. This questioning was conducted by all Defendant Officers. Despite clear and intentional violations of Jayvon Benton's Constitutional rights by Defendant Officers, policymakers Williams and McGrath took no action to investigate, re-train, or discipline Defendant Officers. This amounts to ratification of Defendant Officers' illegal and unconstitutional conduct.

### III. CONCLUSION

Summary Judgment is appropriate at this time because there are no material facts in dispute and Plaintiff is entitled to judgment as a matter of law.  For all of the foregoing reasons, Plaintiff's Motion for Summary Judgment should be granted.

Respectfully submitted,

*/s/ Sara Gedeon*
David B. Malik (0023763)
Sara Gedeon (0085759)
8437 Mayfield Road, Suite 101
Chesterland, Ohio 44026
Telephone:  440-729-8260
Fax:  440-490-1177
dbm30@sbcglobal.net
sgedeon1021@gmail.com

**CERTIFICATE OF COMPLIANCE WITH ORDER (ECF #29)**

I hereby certify that this case in on the Standard Track and that Plaintiff's Memorandum adheres to the page limitations set forth in Local Rule 7.1 and this Court's Order (ECF #29).

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/Sara Gedeon*
Sara Gedeon (0085759)