IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAYVON BENTON, | ) | Case No. 1:18-cv-2159 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| CITY OF CLEVELAND, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | **AND ORDER** |
| | ) | |

**I.     Introduction**

Plaintiff Jayvon Benton claims that defendants violated his constitutional rights by seizing him from the Cuyahoga County Juvenile Justice Detention Center ("CCJJDC") without a warrant or an order from the juvenile court and by interrogating him without advising him of his *Miranda* rights and outside the presence of his mother and attorney. Benton filed this case to recover damages as a result.[1] Because the Ohio Juvenile Court found that defendants violated his Fourth, Fifth, Sixth and Fourteenth Amendment rights, Benton claims that the doctrine of *res judicata* or issue preclusion entitles him to summary judgment on some or all of the claims he has asserted against the defendants in this case. As further explained in this order, after construing the allegations in the complaint in a light most favorable to defendants, the court DENIES, Benton's motion for summary judgment.

---

[1] The parties consented to my jurisdiction. ECF Doc. 24.

## II. Finding of Facts

The court finds the following facts to be undisputed from the Rule 56 evidence. On August 28, 2015, Benton was arrested by the Cuyahoga Metropolitan Housing Authority ("CMHA") in relation to a stolen vehicle. ECF Doc. 41-4 at 1. Because Benton was a minor, he was transported to the CCJJDC. *Id.* On August 31, 2015, case number DL151111991 was filed in the Cuyahoga County Juvenile Court, charging Benton with receiving stolen property and obstructing official business. ECF Doc. 41-3 at 3. The Cuyahoga County Public Defender's Office, Juvenile Division, was appointed by the Juvenile Court to represent Benton. ECF Doc. 41-4 at 2. Benton was arraigned in the Cuyahoga County Juvenile Court on August 31, 2015 and remanded to the CCJJDC. *Id.*

Defendants Shoulders, Shapiro, Lam, Moore and Lally are all employees of the City of Cleveland, Ohio Police Department. ECF Doc. 1 at ¶¶ 19-23. Sergeant Shoulders was assigned to investigate a stolen vehicle and learned that Benton had been arrested by CMHA in relation to the vehicle. ECF Doc. 41-4 at 2. Shoulders contacted the CCJJDC four times to remove Benton; the first three attempts were unsuccessful. *Id.* On September 1, 2015, Shoulders successfully removed Benton from the CCJJDC without a warrant or an order from the juvenile court. *Id.* Shoulders placed Benton in the back of a police car and transported him to the Cuyahoga County Justice Center. ECF Doc. 41-4 at 2-3. Despite being told not to do so, Shoulders began talking to Benton while transporting him to the Justice Center. ECF Doc. 41-4 at 2-3. According to Shoulders, while Benton was at the Justice Center, he told Shoulders that he wanted to "tell his side of the story." ECF Doc. 41-6 at 50.

2

After processing Benton at the Justice Center, Shoulders transported him to the Second District Police Station.  ECF Doc. 41-4 at 2-3.  There, Shoulders, along with defendants, Shapiro, Lam, Moore and Lally, interrogated Benton for approximately three hours. *Id;* ECF Doc. 41-6 at 52.  Benton was not permitted to speak with his mother or his attorney during the interrogation. ECF Doc. 41-4 at 3.  The officers recorded the interrogation but stopped and started the recording several times.  ECF Doc. 41-6 at 136.  Benton was absent from the CCJJDC for approximately five hours on September 1, 2015.  ECF Doc. 41-4 at 3.

On September 20, 2018, after Benton became an adult, he filed a complaint against the City of Cleveland, Chief Calvin Williams, Safety Service Director Michael McGrath, Sergeant Thomas Shoulders, Detective David Shapiro, Detective David Lam, Detective Cynthia Moore, Detective John Lally and several John Doe defendants.  ECF Doc. 1.  Benton asserted six causes of action: 1) a §1983 claim for unlawful seizure against Shoulders; 2) a § 1983 claim for unlawful interrogation and a *Miranda* rights violation against Shoulders, Shapiro, Lam, Moore and Lally; 3) a § 1983 *Monell* claim against Cleveland, Williams and McGrath; 4) a false imprisonment claim against Shoulders, Shapiro, Lam, Moore and Lally; 5) a §1983 civil conspiracy claim against Shoulders, Shapiro, Lam, Moore and Lally; and 6) a civil conspiracy claim against Shoulders, Shapiro, Lam, Moore and Lally.  ECF Doc. 1.

On January 16, 2019, Benton voluntarily dismissed his Fourth Cause of Action for false imprisonment.  ECF Doc. 30.  The court later granted defendants' motion for judgment on the pleadings on Benton's Fifth and Sixth Causes of Action.  ECF Doc. 33.  Thus, the three remaining claims in this case are Benton's Count One § 1983 claim for unlawful seizure against Shoulders; his Count Two §1983 claim for unlawful interrogation and *Miranda* rights violation

against Shoulders, Shapiro, Lam, Moore and Lally, and his Count Three §1983 *Monell* claim against Cleveland, Williams and McGrath.

### III. Standard of Review

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.2505, 91 L.Ed. 2d 202 (1986). As a result, "'[c]onclusory and unsupported allegations, rooted in speculation are insufficient to create a genuine dispute of material fact for trial." *Gunn v. Senior Servs of N. Ky.*, 632 F. App'x 839, 847 (6th Cir. 2015), citing *Bell v. Ohio St. Univ.*, 351 F.3d 240, 253 (6th Cir. 2003); see also Fed. R. Civ. P. 56 (e)(2). As the Supreme Court has explained, "[the non-moving party] must do more than simply show that there is metaphysical doubt as to the material facts." *Matsushita Elec., Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Fed. R. Civ. P. 56(c), (e). However,

4

when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed R. Civ. P. 56(c), (e).

## IV. Arguments Presented

Because there are several different dispositive motions pending in this matter, the parties' arguments are somewhat unfocused. Benton seeks summary judgment based on his argument that the defendants are collaterally estopped from opposing his claims because the state juvenile court ruled that Defendant Shoulders violated Benton's constitutional rights. In making this argument, Benton has not differentiated among his claims; he appears to contend that a ruling in his favor on this issue would entitle him to judgment as a matter of law on all of his remaining claims, including his *Monell* claim, even though the juvenile court never ruled that the City of Cleveland – or any defendant other than Shoulders – violated Benton's constitutional rights.

Equally confusing, defendants have opposed Benton's motion for a variety of reasons including immunity, the lack of evidentiary support for his *Monell* claim and their lack of knowledge and involvement in his seizure and interrogation. These points are relevant to defendants' own motions for summary judgment, but they do not directly respond to Benton's collateral estoppel argument.

First, a brief summary of the parties arguments:

### A. Res Judicata, Collateral Estoppel, Issue Preclusion

Benton argues that the court is precluded from reconsidering issues decided by the Ohio Juvenile Court. The juvenile court found that Defendant Shoulders violated Benton's Fourth and Fourteenth Amendment rights by removing him from the CCJJDC (ECF Doc. 41-4 at 4-10) and his Fifth and Sixth Amendment rights by interrogating him. ECF Doc. 41-4 at 11-13. Benton

argues that the other defendant officers were in privity with the State of Ohio for purposes of issue preclusion. Benton argues that his constitutional violations were fully litigated in the Ohio Juvenile Court and that he is entitled to judgment as a matter of law.

Cleveland argues that the findings of the state juvenile court are not binding on the defendants in this action and that there were no constitutional violations in this case. ECF Doc. 52. Defendants Lam, Shoulders, Shapiro, Moore and Lally argue that the juvenile court transcript is not admissible, and the court should not consider it. They also contend that the juvenile court rulings are not binding on the court. ECF Doc. 51 at 3-4, ECF Doc. 53 at 5-6.

Williams and McGrath argue for dismissal because they have only been sued in their individual capacities. They argue that the claims asserted against them are redundant to those asserted against Cleveland.

### B. *Monell* Claim

Regarding his *Monell* claim, Benton argues that Cleveland failed to properly train its officers on the policy of removing juveniles from the CCJJDC. He further argues that Cleveland and policymakers, Chief Williams and Safety Director McGrath, failed to investigate the illegal and unconstitutional conduct of Defendant Shoulders. Benton argues that the failure to investigate, retrain or discipline any of the defendant officers amounts to a ratification of the officers' unconstitutional actions. Although not explicitly stated, Benton seemingly argues that he is entitled to summary judgment on his *Monell* claim. As noted above, the juvenile court magistrate's decision did not discuss any *Monell* claim because, at the time, the only issue pending before the juvenile court was the alleged unconstitutional conduct of the officers and the possible suppression of Benton's statements.

Cleveland argues that Benton is not entitled to judgment on his *Monell* claim because he has failed to establish any underlying constitutional violation. Cleveland also argues that it did not fail to train its officers and that it cannot be held liable for Defendant Shoulders even if this particular officer was unsatisfactorily trained. Cleveland contends that *Monell* liability cannot attach through the ratification of a single event - that Benton must show a pattern of prior violations. These arguments will be further addressed in the court's memorandum opinion and order on defendants' motions for summary judgment. ECF Doc. 40. The issue involved in this memorandum opinion is whether *Benton* is entitled to summary judgment on his *Monell* claim.

### C. Immunity

Defendant Lam argues that he is immune from liability because Benton has not demonstrated any constitutional violation. Lam argues that Benton was never seized because he was already in custody at the juvenile detention facility when Shoulders removed him. But, even if this argument fails, Lam contends that he cannot be held liable for the seizure because he was unaware of the removal or seizure from CCJJDC. These arguments will be addressed in the court's memorandum opinion on defendants' motions for summary judgment. ECF Doc. 42.

### D. § 1983 Claim for Unlawful Interrogation

Defendant Lam further argues that Benton cannot establish a *Miranda* violation unless a "coerced confession is used against [him] at trial." *Peterson v. Heymes,* 931 F.3d 546, 555 (6th Cir. 2019) citing *Chavez v. Martinez,* 538 U.S. 760, 767 (2003). Because the charges were dismissed and the case didn't even proceed to trial, none of Benton's statements was used against him in violation of his Fifth Amendment rights. Lam also argues that Benton did not have a right to his mother's presence at an interview. Finally, Lam argues that Benton waived his *Miranda* rights. Detective Lam only minimally participated in the interview, asking a few

7

follow-up questions. ECF Doc. 42. These arguments will be addressed in the court's memorandum opinion on defendants' motions for summary judgment. ECF Doc. 42.

## V. Law & Analysis

### A. Issue Preclusion and Collateral Estoppel

The primary issue to be decided on Benton's motion for summary judgment is whether some of defendants' arguments are collaterally estopped by the Ohio Juvenile Court's decision on his motion to suppress. The answer is no.

Ohio's "doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Boone v. Spurgess,* 385 F.3d 923, 927 n.4 (6th Cir. 2004) (quoting *State ex rel. Stacy v. Batavia Local Sch. Dist. Bd. of Educ.,* 97 Ohio St. 3d 269, 2002 Ohio 6322, 779 N.E.2d 216, 219 (Ohio 2002)). Under Ohio law, the party asserting that issue preclusion applies must show these requirements have been met. *See Goodson v. McDonough Power Equip., Inc.,* 2 Ohio St. 3d 193, 2 Ohio B. 732, 443 N.E.2d 978, 985 (Ohio 1983). Benton has failed to satisfy that burden.

The juvenile court's decision, in large part, is limited to the conduct and statements of Defendant Shoulders. So, even if the juvenile court's decision precludes Defendant Shoulders from arguing that he did not violate Benton's constitutional rights, it cannot be used against the other defendants. They were not parties to that action and did not have an opportunity to fully defend themselves in that litigation. The juvenile court's decision did not mention the conduct of

any officer but Shoulders. Nor did it mention any Cleveland policy that caused Shoulders to violate Benton's constitutional rights.

Second, and more fundamentally, the Sixth Circuit has ruled that a plaintiff cannot use issue preclusion offensively to prevent an officer from arguing that a search held unconstitutional in a state suppression proceeding was, in fact, constitutional in a later § 1983 suit. *Thomas v. Plummer,* 489 F. App'x 116, 123 (6th Cir. 2012), citing *Knott v. Sullivan,* 418 F.3d 561, 568 (6th Cir. 2005); *Potts v. Hill*, 77 F. App'x 330, 335 (6th Cir. 2003) ("[U]nder Ohio law, a § 1983 plaintiff cannot use issue preclusion against his arresting officers in evaluating the constitutionality of the arrest even if the state court that acquitted the plaintiff found that a constitutional violation took place.") The reason? Simply put, the issues involved in a §1983 action are not those actually and directly decided on a suppression motion.

More specifically, suppression orders cannot be used offensively in §1983 actions because: Ohio has a general rule that the determination of a fact in a criminal proceeding neither collaterally estops nor bars by *res judicata* the determination of that fact in a later civil action. *Knott,* 418 F.3d at 568 (citing *State ex rel. Ferguson v. Court of Claims of Ohio,* 98 Ohio St. 3d 399, 403-04, 2003 Ohio 1631, 786 N.E.2d 43 (2003)). Collateral estoppel and *res judicata* also are inapplicable because the parties in the §1983 action are typically not the same parties involved in the criminal proceedings. These reasons apply here. The juvenile court did not consider some of the questions defendants raise in this case, such as whether Benton was actually seized from the CCJJDC. The juvenile court magistrate ruled that Benton was seized when he was arrested by CMHA police. ECF Doc. 41-4 at 5. The magistrate also ruled that Shoulders' removal of Benton from the CCJJDC was an arrest not supported by probable cause. ECF Doc.

9

41-4 at 8. The precise issues and parties involved in the determination of the suppression motion were not the same as those involved in this § 1983 action.

Benton argues that all defendants were in privity with the State of Ohio and should be bound by the juvenile court's order. He cites general case law holding that a mutuality of interest including a desired result, create privity. ECF Doc. 41 at 11. This case law does not specifically apply to the facts presented in this case. And, there is no indication that the other officers or Cleveland, McGrath or Williams had any interest in either removing Benton from the CCJJDC or in interrogating him. As pointed out by defendants, Benton has not cited any controlling cases in which a party claimed that a person whose conduct was assessed in the determination of a suppression motion was in privity to other individuals who were sued in a later § 1983 action. ECF Doc. 53 at 7. The Sixth Circuit's law on that issue directly applies and controls here. *Thomas,* 489 F. App'x at 123; *Knott,* 418 F.3d at 568.

Some of the defendants also argue that the state juvenile court's decision is inadmissible and should not even be considered by this court. Defendant Lam argues that Ohio R. Juv. Proc. 37(B) prohibits public use of its court records by any person. The other officer defendants adopt this argument as their own. ECF Doc. 53 at 5. However, in citing this rule, defendants recognize that exceptions are made for the court of appeals or when use of the records is authorized by court order or by statute. ECF Doc. 51 at 3.

Benton's reply asserts that he had permission from the juvenile court to use the transcripts from its proceedings. He obtained an order from the juvenile court granting his motion to use the transcripts in a separate civil matter. ECF Doc. 49-1. Thus, it appears that an exception to the juvenile court's rule likely applies. This court is not persuaded by defendants' argument that the Ohio Juvenile Court's decision is not admissible in this case. However, as it

relates to Benton's motion for summary judgment, it matters little because the court has already determined that the juvenile court's decision is not binding in this § 1983 case.

The Ohio Juvenile Court's decision is not binding in this §1983 action. The issues and parties involved in the Ohio Juvenile Court proceedings were different than those involved in the present litigation.

**B.** *Monell* **Claim**

A city or municipality may only be held liable for the constitutional violations predicated on the conduct of its own employees under 42 U.S.C. § 1983 if those actions are the result of a practice, policy, or custom of the municipality itself. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Such a claim is commonly called a *Monell* claim. Benton argues that he is entitled to summary judgment on his *Monell* claim, as a matter of law, because Cleveland did not train its officers on the CCJJDC's policy for removing juveniles and because Cleveland, Williams and McGrath ratified Shoulders' conduct by failing to investigate it.

In order to bring a *Monell* claim, there must be an underlying constitutional violation by one of the municipality's employees. *Watkins v. City of Battle Creek,* 273 F.3d 682 (6th Cir. 2001). Here, Benton argues that defendants violated his constitutional rights when Defendant Shoulders removed him from the CCJJDC and questioned him without a warrant. However, even if this were so, to succeed on a municipal liability claim, Benton must establish that his constitutional rights were violated *and* that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights. *Miller v. Sanilac Cnty.,* 606 F.3d 240, 254-255 (6th Cir. 2010).

11

There are four types of municipal action which, if they cause the underlying constitutional violation, can establish liability on a *Monell* claim: 1) legislative enactments or official policy; 2) actions by officials with final decision-making authority; 3) a policy of inadequate training or supervision; or 4) a custom of tolerance of rights violations. *France v. Lucas,* No. 1:07CV3519, 2012 U.S. Dist. LEXIS 151344, 2012 WL 5207555, at *12 (N.D. Ohio Oct. 22, 2012), *aff'd*, 836 F.3d 612 (6th Cir. 2016).

Benton argues that Cleveland inadequately trained its employees on the policies of the Juvenile CCJJDC for removing juveniles. To state a claim for failure to adequately train or supervise, a plaintiff must sufficiently plead that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Regets v. City of Plymouth,* 568 F. App'x 380, 394 (6th Cir. 2014). To establish deliberate indifference, the plaintiff ordinarily "'must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Miller v. Sanilac Cnty.,* 606 F.3d 240, 255 (6th Cir. 2010)) (quoting *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir. 2005)).

Benton has not shown any prior instances of unconstitutional conduct arising from the removal of juveniles from the CCJJDC. Also, it is questionable whether Cleveland even had a duty to train its officers regarding a different agency's policies. Certainly, the employees of the CCJJDC should have known and enforced the policy, and several of them did. As indicated above, the undisputed evidence is that Shoulders made several unsuccessful attempts to remove Benton from the CCJJDC. Apparently, he was unsuccessful because the CCJJDC employees followed their own requirements. But, it would be difficult for Cleveland to train its officers

regarding the policies of all other agencies. Benton has not cited any cases which support such a broad training requirement being placed on a municipal employer.

Moreover, even if Cleveland *had* trained its officers regarding the CCJJDC's policy, it is questionable whether Shoulders would have followed it. He testified during the suppression hearing that he called the CCJJDC several times before talking to someone "intelligent" who would permit him to remove Benton. ECF Doc. 41-6 at 105-110. This evidence supports the conclusion that Shoulders intentionally tried to skirt CCJJDC requirements. Cleveland's alleged lack of training cannot be blamed for an intentional violation of the CCJJDC's policy.

After resolving all ambiguities and drawing all reasonable inferences against Benton, the court finds that he is not entitled to summary judgment on his *Monell* claim. Benton has not shown that Cleveland had an obligation to train its officers regarding the CCJJDC's policies. And, even if Benton could make that showing, he has not shown that the alleged lack of training *caused* his constitutional violation. Cleveland's policies or failure to train were not the moving forces behind the alleged constitutional violation and it cannot be held liable on a respondeat superior theory. *Monell*, 436 U.S. at 691, 694.

Benton also argues that Cleveland repeatedly ratified the unconstitutional acts of its officers – especially Defendant Shoulders. ECF Doc. 41 at 15-16. However, Benton does not cite any factual support for this argument. He argues that Cleveland and policymakers, Williams and McGrath, took no initiative to investigate Shoulders' illegal and unconstitutional conduct.

Defendants contend that Williams is not an individual with final decision making authority. They also argue that, to show ratification, Benton must show that there is a pattern of inadequately investigating similar claims, not simply that the city failed to investigate this particular violation. *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.,* 455 F.3d 690, 701

13

n. 5 (6th Cir. 2006). Benton has not produced such evidence. The court concurs with defendants regarding Benton's ratification argument. Even if the defendants' failure to investigate could be construed as a ratification of Shoulders' conduct, a single, after-the-fact ratification does not equal a deliberate indifference or an attitude that could have caused the constitutional violation that took place here. *See Id.* Benton has not met the burden of showing that there are no genuine issues on his § 1983 *Monell* claim.

## VI. Conclusion

The court DENIES, Benton's motion for summary judgment. Benton has not shown that he is entitled to judgment as a matter of law on any of his claims based on the application of *res judicata* or collateral estoppel arising from the decision of the Ohio Juvenile Court. And, separate from any question of collateral estoppel or *res judicata*, Benton has not demonstrated a right to summary judgment on his *Monell* claim.

IT IS SO ORDERED.

Dated: March 13, 2020

Thomas M. Parker
United States Magistrate Judge