IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAYVON BENTON,          )     Case No. 1:18-cv-2159
                                      )
        Plaintiff,          )
                                        )     MAGISTRATE JUDGE
        v.                )     THOMAS M. PARKER
                                        )
CITY OF CLEVELAND, et al.,     )
                                      )     **MEMORANDUM OF OPINION**
        Defendants.     )     **AND ORDER**
                                        )

## I.    Introduction

Plaintiff Jayvon Benton claims that defendants violated his constitutional rights by seizing him from the Cuyahoga County Juvenile Justice Detention Center ("CCJJDC") without a warrant or an order from the juvenile court and interrogating him without advising him of his *Miranda* rights and outside the presence of his mother and attorney. Benton filed this case to recover damages as a result.[1] The facts of this case are troubling. Thomas Shoulders, a sergeant with the Cleveland Police Department, removed Benton from the Cuyahoga County Justice Juvenile Detention Center ("CCJJDC") in violation of CCJJDC's policies and for the purpose of investigating another crime. The Ohio Juvenile Court found that Shoulders violated Benton's constitutional rights and excluded the evidence that Shoulders obtained as a result of the removal and subsequent interrogation. As a result, the charges against Benton were dismissed. Benton, having now reached the age of 18, filed this lawsuit against Shoulders and others for the alleged

---

[1] The parties consented to my jurisdiction. ECF Doc. 24.

seizure and interrogation that took place in September 2015. Benton points to the juvenile court determination that his rights were violated. This court must decide anew whether Shoulders' actions violated Benton's constitutional rights because this court is not bound by the juvenile court's ruling. Unfortunately for Benton, after taking a fresh look at the question of whether the defendants violated his constitutional rights, the answer to that question is no.

Because Benton has failed to show that there are genuine issues of fact as to whether his constitutional rights were violated by Shoulders' conduct, all of the defendants are entitled to summary judgment on Benton's §1983 claims against them. Even after construing Benton's allegations in a light most favorable to him, the court must GRANT the motions for summary judgment filed by the City of Cleveland, Calvin Williams and Michael McGrath (ECF Doc. 40); Thomas Shoulders, David Shapiro, Cynthia Moore and John Lally (ECF Doc. 43); and David Lam (ECF Doc. 42).

## II.    Finding of Facts

The court finds the following facts to be undisputed from the Rule 56 evidence. On August 28, 2015, Benton was arrested by the Cuyahoga Metropolitan Housing Authority ("CMHA") in relation to a stolen vehicle. ECF Doc. 41-4 at 1. Because Benton was a minor, he was transported to the CCJJDC. *Id.* On August 31, 2015, case number DL151111991 was filed in the Cuyahoga County Juvenile Court, charging Benton with receiving stolen property and obstructing official business. ECF Doc. 41-3 at 3. The Cuyahoga County Public Defender's Office, Juvenile Division, was appointed by the juvenile court to represent Benton. ECF Doc. 41-4 at 2. Benton was arraigned in the juvenile court on August 31, 2015 and remanded to the CCJJDC. *Id.*

Defendants Shoulders, Shapiro, Lam, Moore and Lally are all employees of the Cleveland, Ohio Police Department. ECF Doc. 1 at ¶¶ 19-23. Sergeant Shoulders was assigned to investigate a stolen vehicle and learned that Benton had been arrested by CMHA in relation to the vehicle. ECF Doc. 41-4 at 2. Shoulders contacted the CCJJDC four times to remove Benton for processing; the first three attempts were unsuccessful. *Id.* On September 1, 2015, Shoulders successfully removed Benton from the CCJJDC without a warrant or an order from the juvenile court. *Id.* Shoulders placed Benton in the back of a police car and transported him to the Cuyahoga County Justice Center. ECF Doc. 41-4 at 2-3. Despite being told not to do so, Shoulders talked to Benton while transporting him to the Justice Center. ECF Doc. 41-4 at 2-3. According to Shoulders, while Benton was at the Justice Center, he told Shoulders that he wanted to "tell his side of the story." ECF Doc. 41-6 at 50.

After processing Benton at the Justice Center, Shoulders transported Benton to the Second District Police Station. ECF Doc. 41-4 at 2-3. There, Shoulders, along with defendants, Shapiro, Lam, Moore and Lally, interrogated Benton for approximately three hours. *Id.* Benton was not permitted to speak with his mother or his attorney during the interrogation. *Id.* The officers recorded the interrogation but stopped and started the recording several times. ECF Doc. 41-6 at 136. Benton was absent from the CCJJDC for approximately five hours on September 1, 2015. ECF Doc. 41-4 at 3.

On September 20, 2018, after Benton's eighteenth birthday, he filed a complaint against the City of Cleveland, Chief Calvin Williams, Safety Service Director Michael McGrath, Sergeant Thomas Shoulders, Detective David Shapiro, Detective David Lam, Detective Cynthia Moore, Detective John Lally and several John Doe defendants. ECF Doc. 1. Benton asserted six causes of action: 1) a §1983 claim for unlawful seizure against Shoulders; 2) a § 1983 claim for

unlawful interrogation and a *Miranda* rights violation against Shoulders, Shapiro, Lam, Moore and Lally; 3) a § 1983 *Monell* claim against Cleveland, Williams and McGrath; 4) a false imprisonment claim against Shoulders, Shapiro, Lam, Moore and Lally; 5) a §1983 civil conspiracy claim against Shoulders, Shapiro, Lam, Moore and Lally; and 6) a civil conspiracy claim against Shoulders, Shapiro, Lam, Moore and Lally.  ECF Doc. 1.

On January 16, 2019, Benton voluntarily dismissed his Fourth Cause of Action for false imprisonment.  ECF Doc. 30.  The court later granted defendants' motion for judgment on the pleadings on Benton's Fifth and Sixth Causes of Action.  ECF Doc. 33.  Thus, the three remaining claims in this case are Benton's Count One § 1983 claim for unlawful seizure against Shoulders; his Count Two §1983 claim for unlawful interrogation and *Miranda* rights violation against Shoulders, Shapiro, Lam, Moore and Lally; and his Count Three §1983 *Monell* claim against Cleveland, Williams and McGrath.

## III.    Standard of Review

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.2505, 91 L.Ed. 2d 202 (1986).  As a result, "'[c]onclusory and unsupported allegations, rooted in speculation' are insufficient to create a genuine dispute of material fact for trial."  *Gunn v. Senior Servs of N. Ky.*, 632 F. App'x 839, 847 (6th Cir. 2015), citing *Bell v. Ohio St. Univ.*, 351 F.3d 240, 253 (6th Cir. 2003); see also Fed. R. Civ. P. 56 (e)(2).  As the Supreme Court has explained, "[the non-moving party] must do more than simply show that there is metaphysical doubt as to the material facts."  *Matsushita Elec.,*

*Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed R. Civ. P. 56(c), (e).

## IV.    Arguments Presented

We begin with a brief summary of the parties' main arguments. Defendants Williams and McGrath argue that they must be dismissed because Benton has only sued them in their official capacities. ECF Doc. 40 at 11. These defendants also argue that the John Doe defendants must be dismissed because Benton has neither identified nor served them. ECF Doc. 40 at 12.[2]

Defendants Shapiro, Moore, Lally and Lam argue that the only defendant implicated in Benton's §1983 seizure claim is Shoulders. They argue that they are entitled to summary

---

[2] Benton concedes that the John Doe defendants should be dismissed. ECF Doc. 48 at 5.

judgment on Benton's seizure claim because they did not seize him or participate in his removal from the CCJJDC.

All defendants argue that Benton has failed to establish that a constitutional violation occurred when he was seized because he was already in custody before Shoulders removed him from the CCJJDC for processing and questioning. ECF Doc. 40 at 12-17. They also contend that he cannot sue for unlawful interrogation[3] because the statements he made (allegedly in violation of his *Miranda* rights) were suppressed and, therefore, not used against him.[4] ECF Doc. 40 at 17-18. Directly related to their lack of a constitutional violation argument is the officer defendants' argument that they enjoy a qualified immunity from Benton's claims.

Cleveland, Williams and McGrath argue that they are entitled to summary judgment on Benton's *Monell* claim. They argue that there is no evidence that a policy or custom of the city caused any alleged violation of Benton's constitutional rights. ECF Doc. 40 at 18-19. Cleveland's official policies prohibit Shoulders' conduct and there is no evidence that any actions were taken by officials with final decision making authority. They contend that there is no evidence of inadequate training or supervision or of a custom of tolerance of rights violations. They argue that Benton has failed to show prior instances of similar conduct that would support his claim of a pattern of rights violations. ECF Doc. 40 at 21-25.

---

[3] Defendants also argue that Benton had no constitutional right to his mother's presence at his interrogation. *See e.g., Bolden v. City of Euclid,* Case No. 1:12 CV 1666, fn4, 2013 U.S. Dist. LEXIS 156997 (N.D. Ohio, Nov. 1, 2015).

[4] Defendant Lam argues that he was not involved in any interrogation before Benton was advised of his *Miranda* rights. Defendant Lam heard Benton waive his *Miranda* rights and observed him being treated courteously during his interview. ECF 42-2 at 2.

Benton argues[5] that his constitutional rights *were* violated when "defendants"[6] unconstitutionally seized him from the CCJJDC.  Benton cites several cases holding that prisoners still have certain constitutional rights.  He also relies upon *Ortega v. United States Immigration & Customs Enforcement,* 737 F.3d 435, 440 (6th Cir. 2013), a case cited by this court in its order denying defendants' motion for judgment on the pleadings.  Benton argues that *Ortega* suggests that Benton could be considered seized in violation of his Fourth Amendment rights even though he was in custody prior to the seizure.  Benton also attempts to distinguish the cases cited by defendants.  ECF Doc. 48 at 7-9.  He argues that that the juvenile court's decision conclusively established that he was unlawfully seized in violation of his Fourth and Fourteenth Amendment rights.

Benton also argues that he was unlawfully interrogated in violation of his Fifth and Sixth Amendment rights.  He argues that Shoulders violated CCJJDC policy when he talked to Benton without permission from Benton's attorney.  He also argues that Shoulders used deception to elicit information from Benton.  And, as with his seizure claim, he argues that the juvenile court's decision conclusively established that his Fifth and Sixth Amendment rights were violated.

Regarding his *Monell* claim, Benton argues that Cleveland inadequately trained its officers regarding the removal of a juvenile from the CCJJDC and the interrogation of a juvenile or a suspect represented by counsel.  As proof, he cites the fact that none of the officers knew about the CCJJDC's policy that has been in effect since 1988.  Benton also argues that

---

[5] Benton acknowledges that his claims against Williams and McGrath are nothing more than claims against the city. However, he argues that the Sixth Circuit does not affirmatively require a dismissal of official capacity claims. *Baker v. Cty. of Macomb,* 2015 U.S. Dist. LEXIS 129936.  ECF Doc. 48 at 5.  Because the court finds that all defendants are entitled to summary judgment, further evaluation of this argument is not merited.
[6] Only Shoulders removed Benton from the CCJJDC.  Despite this uncontroverted fact, some of Benton's filings state that "defendants" seized him in violation of his Fourth Amendment rights.

defendants ratified Shoulders' unconstitutional acts by failing to investigate what happened in this case. He argues that Chief Williams had the final and unreviewable authority to investigate Cleveland police officers' conduct and should have investigated Shoulders' actions. ECF Doc. 48 at 16-17.

## V.     Law & Analysis

### A.     Underlying Constitutional Violation

For his three remaining claims, Benton must show that defendants violated his constitutional rights. Benton's First and Second Causes of Action, asserted pursuant to 42 U.S.C. § 1983, require proof that Shoulders and the other officers violated his constitutional rights. Although violations of constitutional rights by government officials acting under color of state law are generally subject to redress under 42 U.S.C. § 1983, the doctrine of qualified immunity shields officials from liability "insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (citation omitted). Thus, in order to overcome qualified immunity and show that there are genuine issues of fact on his §1983 claims against the officers, Benton must show that defendants' conduct violated a clearly established constitutional right. Otherwise, they are immune to liability on his §1983 claims.

Similarly, in order to avoid summary judgment on the Count Three §1983 *Monell* claim, Benton must establish that there was a constitutional violation by one of the municipality's employees. *Watkins v. City of Battle Creek,* 273 F.3d 682 (6th Cir. 2001). If no constitutional violation occurred, then the city cannot be liable on a *Monell* claim.

All of the defendants argue that there was no underlying constitutional violation because Benton was in custody before Shoulders removed him from the CCJJDC.  As the parties have noted in their filings, the court, when ruling on defendants' motion for judgment on the pleadings, observed that the Sixth Circuit had suggested that a transfer from home confinement to prison might implicate the due process rights of the person in custody.  *See Ortega,* 737 F.3d at 440.  Given the juvenile court's decision and Defendant Shoulders' admitted violation of the CCJJDC's policies regarding removing juveniles, the court left open the possibility that Benton might also be able to show that Shoulders' conduct violated Benton's constitutional rights. However, Benton has failed to identify case law supporting the finding that a constitutional violation occurred under these circumstances.

First, as was more fully explained in the court's order on Benton's motion for summary judgment, this court is not bound by the juvenile court's decision.  The Sixth Circuit has held that a plaintiff cannot use issue preclusion offensively to prevent an officer from arguing that a search held unconstitutional in a state suppression proceeding was, in fact, constitutional in a later § 1983 suit.  *Thomas v. Plummer,* 489 F. App'x 116, 123 (6th Cir. 2012), citing *Knott v. Sullivan,* 418 F.3d 561, 568 (6th Cir. 2005);  *Potts v. Hill*, 77 F. App'x 330, 335 (6th Cir. 2003) ("[U]nder Ohio law, a § 1983 plaintiff cannot use issue preclusion against his arresting officers in evaluating the constitutionality of the arrest even if the state court that acquitted the plaintiff found that a constitutional violation took place.")

### 1. Fourth Amendment Seizure

Defendants argue that Benton was not seized from the CCJJDC because he was already in custody when Defendant Shoulders removed him from the CCJJDC.  After examining the cases cited, the court concurs.  In *Ortega,* the Sixth Circuit left open the question of whether

Ortega had been seized in violation of the Fourth Amendment when he was removed from his home during a period of home confinement. *Ortega,* 737 F.3d at 439. Despite the possible finding of a seizure in that context, the Sixth Circuit held that there was no controlling authority or a "robust consensus of cases of persuasive authority" existing at the time of the seizure to establish that Ortega had a liberty interest in remaining in home confinement. Because no such authority existed, Ortega did not establish any clearly established constitutional violation, and the officers enjoyed a qualified immunity from his claims. *Ortega,* 737 F.3d at 440.

Similarly, Benton has not cited any controlling case law or a "robust consensus of cases of persuasive authority" showing that he had a *clearly established* liberty interest in remaining at the CCJJDC. Accordingly, even if his removal from that facility constituted a seizure, Benton has identified no controlling authority that would have alerted Shoulders or the other defendants that Benton had a liberty interest in remaining at the CCJJDC. In other words, there was no clearly established constitutional right violated by Shoulders when he removed Benton from the CCJJDC. Like Ortega, Benton ultimately has failed to establish that he had a clearly established constitutional right to remain at the CCJJDC and the officer defendants enjoy immunity from his claims.

The cases Benton cites are inapposite. Benton cites *Beard v. Banks,* 548 U.S. 521, syllabus, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006) for the proposition that imprisonment does not automatically deprive an inmate of all constitutional rights. The *Beard* decision recognized that proposition but also noted that the Constitution sometimes permits greater restriction of such rights in prison than it would allow elsewhere. *Id.* And, the holding of *Beard* was that the Pennsylvania Department of Corrections was entitled to summary judgment because it had not violated inmates' First Amendment rights by restricting their reading materials in the most

restrictive section of the prison.  *Id.* at 531-533.  The *Beard* decision has little application to the

facts of this case, and any application it *may* have undercuts, rather than supports, Benton's

argument.

Similarly, Benton cites *United States v. Solomon,* Case No. 02: 05cr0385-01, 2007 U.S.

Dist. LEXIS 26825 (W. D. Pa. 2007) in which the district court recognized that prisoners had

limited Fourth Amendment rights, and that Defendant Solomon had no expectation of privacy in

either his incoming or outgoing mail while incarcerated.  As with the *Beard* holding, this case

does not support Benton's claim.

Benton also cites *Moore v. Carwell,* 168 F.3d 234, 1999 U.S. App. LEXIS 3458 (5th Cir.

1999)  and *Hayes v. Marriot,* 70 F.3d 1144, 1995 U.S. App. LEXIS 32527 (10th Cir. 1995), in

which the Fifth and Tenth Circuits held that prisoners have limited Fourth Amendment rights

against unreasonable strip searches while incarcerated.  *Id.* at 237.  Benton was not strip searched

while incarcerated so these cases have little application to his claims.

Benton argues that he was not yet convicted when Defendant Shoulders seized him from

the CCJJDC.  *See* ECF Doc. 49 at 11.  However, he has not explained how this fact supports his

claim.  Nor has he cited any authority holding that one cannot be considered "in custody" before

conviction, likely because that is not the law.  Were the court to hold otherwise, thousands of

cases that have applied *Miranda* to conclude that in-custody suspects were entitled to a reading

of their constitutional rights would be called into question.

Benton also argues that he was "afforded constitutional rights through the policies and

procedures of the CCJJDC."  ECF Doc. 48 at 7.  Although the CCJJDC's polices may have been

adopted, in part, to *protect* constitutional rights, they did not create new constitutional rights.  In

other words, the juvenile court's policy did not create a new constitutional right not to be

removed from the CCJJDC without a warrant. Benton has cited no authority for the proposition that the CCJJDC has the ability to establish new constitutional rights by enacting policy. The CCJJDC certainly has the authority to establish and enforce policies, but the fact that its policies were not enforced – or were violated – here does not equate to a constitutional violation.

Defendants cite numerous cases[7] to support their argument that no Fourth Amendment seizure occurred when Shoulders removed Benton from the CCJJDC because he was already in custody. *See Marceleno v. California Dept. of Corrections and Rehabilitation,* Case No. 1:17-cv-01136, 2019 U.S. Dist. LEXIS 85641 at *14 (E.D. Cal. May 21, 2019) ("it is legally impossible for a prisoner, who is already in custody, to be subjected to a "seizure" under the Fourth Amendment."); *Goldhaber v. Higgins,* 576 F.Supp.2d 694, 718 (W.D. W.D. Pa. 2007) ("Since Goldhaber was already incarcerated at the time of the alleged "seizure," the Court agrees with the Defendants' contention that he was not seized for purposes of the Fourth Amendment when he was moved from Cambria County to Bedford County."); *Ismail v. Freeman,* Case No. SA CV 11-1751, 2013 U.S. Dist. LEXIS 132270 (C. D. Cal., Sept. 13, 2013) (An arrest while already in custody is not a Fourth Amendment seizure.); *Gundlach . Mora,* Case No. 13-cv-00031, 2013 U.S. Dist. LEXIS 156418 (D. Colo., Sept. 5, 2013), ("[P]laintiff, who already was in custody at the time defendants, [officers] allegedly forced her to be transported to the hospital, was not independently "seized" within the meaning of the Fourth Amendment."); *Hebbe v. Cal. Dept. of Corr. & Rehab.,* No. C 12-4037, 2012 U.S. Dist. LEXIS 160630 at *9 (N.D. Cal., Nov. 8, 2012) ("[N]o authority that an inmate has the Fourth Amendment right not to be moved by prison officials from one part of a prison to another."); *Brown v. Venango Cnty.,* C.A. No. 09-268 Erie, 2010 U.S. Dist. LEXIS 134837 at *14 (Brown "is precluded from claiming that the

---

[7] For brevity's sake, some of defendants' citations have been omitted from the court's summary.

challenged transfer [from federal to state custody] constituted an illegal "seizure" in violation of his Fourth Amendment rights, since he had already been "seized" for purposes of the Fourth Amendment."); *U.S. ex rel. Vanorsby v. Acevedo,* Case No. 11C 7384, 2012 U.S. Dist. LEXIS 120500 at *16-17 (N.D. Ill., August 24, 2012) (Fourth Amendment claim fails because petitioner was not "unreasonably" seized when he was transferred from a Cook County jail where he was being held for unrelated charges into the custody of the Chicago detectives.); *Harris v. Bowser,* 369 F. Supp.3d 93, 101-103 (D.D.C. 2019) (Harris was not seized when he was transported from a mental health facility where he was civilly committed to court for a hearing.); *Anderson v. Paloranta,* Case No. 18-cv-01338, 2018 U.S. Dist. LEXIS 221401 at *10 (D. Colo., Dec. 20, 2018) (rejecting plaintiff's argument that he was seized each time he was transferred to a different facility).

Benton attempts to distinguish some of these cases. He argues that the *Brown* case involved an order of transfer and no order was issued in his case. He also argues that Brown had a pending criminal case and Benton did not. ECF Doc. 48 at 8. Similarly, he argues that *Harris v. Bowser* involved a court-ordered removal and transport. *Id.* Benton argues that the detectives in *Vanorsby* properly followed the jail's protocols, but Shoulders did not. *Id.* He attempts to distinguish *Anderson,* arguing that the inmate was accused of an additional crime by a corrections officer, but Benton was not accused of committing any additional crimes by staff at CCJJDC. ECF Doc. 48 at 9. Benton also points out that he was a minor at the time that Shoulders removed him from the CCJJDC, but he has not explained how this impacts the constitutional analysis. Nor has he cited any case law holding that the analysis is different for minors.

Having fully reviewed the parties' cited cases, the court finds that there is a "robust consensus of cases of persuasive authority" holding that an individual whose liberty interest has already been restrained cannot be seized again for purposes of the Fourth Amendment. Benton's attempt to distinguish some of the cases falls short of the target. For example, Benton argues that the *Anderson* case should be distinguished because no one at the CCJJDC accused him of committing additional crimes. But it is hard to see how this argument counters *Anderson's* holding that an individual is not seized for purposes of the Fourth Amendment when he is transported to a different facility. The identity of the agency that had accused Anderson of additional crimes was not particularly relevant to the Fourth Amendment analysis nor is that fact relevant here. Having considered the parties' authorities, including the full holding of *Ortega,* the court is constrained to find that Benton has not shown that Shoulders violated a clearly established Fourth Amendment right, because Benton was already in custody when Shoulders removed him from the CCJJDC.[8] As will be further explained below, the officer defendants enjoyed a qualified immunity from this alleged constitutional violation.

### 2. Fifth and Sixth Amendment Coercion

Benton also argues that his Fifth and Sixth Amendment rights were violated when Shoulders and the other officer defendants interrogated him for several hours without advising him of his *Miranda* rights and outside the presence of his mother and attorney. Defendants argue that, even if Benton can show that he was coerced and not given the opportunity to remain silent,

---

[8] The court's finding that Benton was not seized and that there was no violation of his Fourth Amendment rights is dispositive of many of defendants' related arguments. For example, Benton's First Cause of Action was limited to the conduct of Defendant Shoulders. The evidence shows that Shoulders acted alone in removing Benton from the CCJJDC. Decl. Thomas Shoulders, ¶ 19, ECF Doc. 43-1 at 3. Thus, even if Benton had established a violation of his clearly established constitutional right, this claim could not remain pending against the other officer defendants.

he has no right to redress under 42 U.S.C. §1983 because his statements were not used in a criminal proceeding against him. ECF Doc. 40 at 17. Benton does not offer much defense to this argument. He argues that the officer defendants violated CCJJDC policy by interrogating him without his mother and attorney. He also relies on the juvenile court's decision finding a violation of his Fifth and Sixth Amendment rights. But, as already stated, this court is not bound by the juvenile court's decision. And, Benton has cited no authority finding a constitutional violation when statements made without counsel or *Miranda* warnings were *not* later used to incriminate. ECF Doc. 48 at 12-13.

"[M]ere coercion does not violate the . . . Self-Incrimination Clause absent use of the compelled statements in a criminal case." *McKinley v. City of Mansfield,* 404 F.3d 418, 430 (6th Cir. 2005), citing *Chavez v. Martinez,* 538 U.S. 760, 769, 155 L. Ed. 2d 984, 123 S. Ct. 1994 (2003) (plurality opinion). It is only when compelled incriminating statements are used in a criminal proceeding, that an accused has suffered the requisite constitutional injury for purposes of a § 1983 claim. *Id.* at 769, 772-73. *See also Lingler v. Fechko*, 312 F.3d 237, 238-40 (6th Cir. 2002) (finding no Fifth Amendment violation sufficient to sustain a § 1983 claim when police officer-employees who had made incriminating statements in compulsory interviews with superiors were never prosecuted). Benton's statements were excluded and the charges against him were dismissed. Because his statements were not used against him in a criminal proceeding, he did not suffer any Fifth or Sixth Amendment constitutional injury for purposes of his §1983 action.

To state it differently, the state juvenile court found that the State of Ohio violated Benton's Fifth and Sixth Amendment rights. As a result, that court precluded the State of Ohio from using the information gleaned from the unconstitutional interrogation to prosecute Benton.

The Ohio Juvenile Court's *protection* of Benton's constitutional rights is the very thing that has prevented him from being able to successfully claim in this case that he was damaged by the violation.

### B. Qualified Immunity

The officer defendants argue that they enjoy a qualified immunity to Benton's § 1983 claims. ECF Doc. 43 at 11-14. In *Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272, the Supreme Court established a two-step sequence for determining government officials' qualified immunity claims. First, the court must decide whether the facts a plaintiff has alleged (*see* Fed. R. Civ. P. 12(b)(6), (c)) or shown (*see* Fed. R. Civ. P. 50, 56) state a constitutional right violation. 533 U.S., at 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272. Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* Qualified immunity is unavailable when the official's conduct violated a clearly established constitutional right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523; *Pearson v. Callahan,* 555 U.S. 223, 224, 129 S. Ct. 808 **, 172 L. Ed. 2d 565 (2009).

As stated above, Benton has not shown that the officer defendants violated a clearly established constitutional right under the Fourth, Fifth, Sixth or Fourteenth Amendments. This court is not bound by the Ohio Juvenile Court's exclusion of evidence based on its finding that Benton's constitutional rights were violated. Benton has not shown controlling case law or a "robust consensus of cases of persuasive authority" holding that an individual's Fourth Amendment rights are violated when he is transferred from one agency's custody to another's. Nor has he shown that a Fifth or Sixth Amendment violation can occur absent the prejudicial use of improperly obtained statements in a subsequent court proceeding. Because Benton has failed

to show that genuine issues of fact exist as to whether a clearly established constitutional right was violated, the officer defendants are immune from liability on Benton's § 1983 claims.

### C.    *Monell* Claim

Benton's Third Cause of Action is a § 1983 *Monell* claim against Cleveland, Williams and McGrath.  ECF Doc. 1.  A city or municipality may only be held liable for constitutional violations committed by its employees under 42 U.S.C. § 1983 if those actions were the result of a practice, policy, or custom of the municipality itself.  *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Cleveland, Williams and McGrath argue that they are entitled to summary judgment on Benton's *Monell* claim, as a matter of law, because Benton has failed to show that a constitutional violation occurred, or that Cleveland's failure to properly train or investigate *caused* the constitutional violation.

In order to successfully bring a *Monell* claim, a plaintiff must prove that a municipality's employees violated his or her constitutional rights.  *Watkins v. City of Battle Creek,* 273 F.3d 682 (6th Cir. 2001).  Therefore, to successfully prosecute his *Monell* claim, Benton must establish that his constitutional rights were violated, *and* he must prove that a City of Cleveland policy or custom was the 'moving force' behind the deprivation of his rights.  *Miller v. Sanilac Cnty.,* 606 F.3d 240, 254-255 (6th Cir. 2010).

As explained above, Benton has not established that Cleveland police officers violated his constitutional rights for purposes of his §1983 *Monell* claim.  But, even if it is assumed for the sake of argument that he could make that showing, Benton has not established that Cleveland's policies, lack of training, or ratification of Shoulders' conduct *caused* the constitutional violation.

There are four types of municipal action which, if they cause a constitutional violation, can establish liability under a *Monell* claim: 1) legislative enactments or official policy; 2) actions by officials with final decision-making authority; 3) a policy of inadequate training or supervision; or 4) a custom of tolerance of rights violations. *France v. Lucas,* No. 1:07CV3519, 2012 U.S. Dist. LEXIS 151344, 2012 WL 5207555, at *12 (N.D. Ohio Oct. 22, 2012), *aff'd*, 836 F.3d 612 (6th Cir. 2016).

Benton argues that Cleveland inadequately trained its employees on the policies of the CCJJDC for removing juveniles. To state a claim for failure to adequately train or supervise, a plaintiff must sufficiently plead that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually *caused* the injury." *Regets v. City of Plymouth,* 568 F. App'x 380, 394 (6th Cir. 2014) (emphasis added). To establish deliberate indifference, the plaintiff ordinarily "'must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Miller v. Sanilac Cnty.,* 606 F.3d 240, 255 (6th Cir. 2010)) (quoting *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir. 2005)).

Benton has not shown any prior instances of unconstitutional conduct related to removing juveniles from the CCJJDC. In his discovery responses, he listed some cases involving Defendant Shoulders, but he has not shown that any of these cases involved the same conduct involved here. See ECF Doc. 40-1 at 6. Also, it is questionable whether Cleveland even had a duty to train its officers regarding a different agency's policies. Certainly, the employees of the CCJJDC should have known and been responsible for enforcing the policy, and many of them

probably did.  But, it would be difficult for Cleveland to train its officers regarding the policies of all other agencies or regarding what to do if another agency's employees failed to enforce their own rules.  Moreover, even if Cleveland had properly trained its officers regarding the CCJJDC's policy, it is questionable whether Shoulders would have followed it.  He testified during the suppression hearing that he called the CCJJDC several times before talking to someone who would permit him to remove Benton without a warrant or court order.  ECF Doc. 41-6 at 105-110.  This fact makes it seem like he was intentionally trying to remove Benton without following the CCJJDC's policy.  If so, it could not be said that Cleveland's failure to train caused the violation of CCJJDC's policy.  And Benton has produced no evidence that any managerial employee of the City of Cleveland was aware of what Shoulders was doing at the time he removed Benton from CCJJDC.

Benton also argues that Cleveland repeatedly ratified the unconstitutional acts of its officers – especially Defendant Shoulders.  ECF Doc. 41 at 15-16.  However, Benton has not cited any factual support for this argument.  He argues only that Cleveland and policymakers, Williams and McGrath, took no initiative to investigate Shoulders' illegal and unconstitutional conduct from these particular events.

Defendants contend that in order for Benton to prove ratification, he must show that there was a pattern of inadequately investigating similar claims, not simply that the city failed to investigate this particular violation.  *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.,* 455 F.3d 690, 701 n. 5 (6th Cir. 2006).  This court concurs with defendants regarding Benton's ratification argument.  Even if the failure to investigate could be construed as a ratification of Shoulders' conduct, a single, after-the-fact ratification does not equal a deliberate indifference or an attitude that could have caused the alleged constitutional violation that took place here.  *See*

*Id.* Benton has not met his burden to demonstrate that there are no genuine issues on his § 1983 *Monell* claim.

After resolving all ambiguities and drawing all reasonable inferences in favor of Benton, the court finds that he has not shown that genuine issues of fact exist on his §1983 *Monell* claim. Benton has not shown that Cleveland had an obligation to train its officers regarding the CCJJDC's policies. And, even if Benton could make that showing, he has not shown that the alleged lack of training *caused* a constitutional violation. Nor has he shown that Cleveland was deliberately indifferent toward the alleged violation by Defendant Shoulders. Cleveland's policies or alleged failure to train were not the moving forces behind the alleged constitutional violation and Cleveland, McGrath and Williams cannot be held liable on a respondeat superior theory. *Monell*, 436 U.S. at 691, 694. Because Benton has failed to show that genuine issues of fact exist on his §1983, *Monell* claim, Cleveland, Williams and McGrath are entitled to summary judgment on his Third Cause of Action.

## VI. Conclusion

After resolving all ambiguities and drawing all reasonable inferences against defendants, the court finds that there are no genuine issues of fact on Benton's § 1983 claims. Benton has not shown that an underlying constitutional violation occurred or that Cleveland, McGrath and Williams' failure to train officers or ratification of Shoulders' conduct caused the alleged constitutional violation. Nor has Benton shown that defendants are not entitled to a qualified immunity for their conduct in this case. For these reasons, the court GRANTS the motions for summary judgment filed by the City of Cleveland, Calvin Williams and Michael McGrath (ECF Doc. 40); Thomas Shoulders, David Shapiro, Cynthia Moore and John Lally (ECF Doc. 43); and David Lam (ECF Doc. 42).

IT IS SO ORDERED.

Dated: March 13, 2020

Thomas M. Parker
United States Magistrate Judge